# NATURAL FOOD COMPANY *v.* WILLIAMS.

### TRADEMARKS; TEN YEARS' USE.

An application for registration of the words "Shredded Whole Wheat," the applicant claiming to have used those words for ten years as a trademark for its product, is properly denied where it appears that the applicant during that time was not the exclusive user of the words, but, on the contrary, the opposer of the application had invented and operated a machine for converting the whole grains of wheat into shreds, had sold its product as shredded whole wheat, which words accurately and properly described such product, and that patents had been granted to others for machines for converting cereals, including wheat, into shreds; and it also appears that the trademark of the applicant, used during a part of such period of ten years, did not itself contain such words, but that they appeared under a distinctive device, apparently to describe the contents of the applicant's package.

No. 455.   Patent Appeals.   Submitted January 22, 1908.   Decided February 4, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents sustaining a notice of opposition to registration of a trademark.                                    *Affirmed.*

The facts are stated in the opinion.

*Mr. E. W. Anderson* and *Mr. H. A. Seymour* for the appellant.

*Mr. Wallace Greene* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents sustaining the opposition to the registration of the

words "Shredded Whole Wheat" as a trademark for biscuits or crackers.

Appellant, the Natural Food Company, in June, 1905, filed an application for the registration of these words under the so-called "ten years clause" found in the act of February 20, 1905 (33 Stat. at L. 724, chap. 592, U. S. Comp. Stat. Supp. 1907, p. 1008). Subsequently William E. Williams, the appellee here, filed a notice of opposition, in which he averred "that the applicant, the Natural Food Company, has not in fact used the words constituting the alleged trademark, as a supposed trademark, for ten years; that the said applicant has not been the exclusive user of the words constituting the alleged trademark, upon the specified goods, for the time of the alleged use by said company." He also averred that he made a machine for producing shredded whole wheat as early as the early part of 1894; and that he had produced and sold the product of that and other improved machines which he subsequently constructed, as shredded whole wheat.

We have carefully examined the record in this case, and unhesitatingly sustain the view entertained by the tribunals of the Patent Office. It appears that the appellee, Williams, who as a boy learned the miller's trade in a flour mill, and who later became a civil engineer, early in 1894 built a machine "the function of which was to convert the whole grains of wheat into shreds." That he constructed and operated this machine at that time is established beyond question, since he is corroborated by two disinterested and intelligent witnesses. Williams endeavored to interest capital in his invention, and succeeded to some extent. At all events, in 1902 he was enabled to build an improved machine, and has since constructed others. The capacity of the 1902 machine was much greater than that of the earlier machine, and from that time Williams has continued without interruption to manufacture and sell shredded whole wheat. He is corroborated by the machinist who worked on the 1902 machine, and who testified in detail as to its capacity and to the extent to which it was operated after its completion. The proprietor of a large restaurant in Chicago

testified to having purchased regularly shredded whole wheat from Williams since as early as 1903. Williams himself testified that the words "shredded whole wheat" accurately and properly described the product of his machine, and that he had always marked the boxes containing such food product as "Shredded Whole Wheat." He said: "In my opinion, should anybody get a monoply of the words 'Shredded Whole Wheat,' it would be impossible to mark the shreds made of whole wheat or describe them in an intelligent way without being considered by the owner of such a trademark as the words 'Shredded Whole Wheat' considering that his rights were being infringed, and thereby he might worry and annoy an innocent manufacturer in the proper description of his goods." He also offered in evidence several patents, some of which were granted in 1894, which disclose machines for converting cereals, including whole wheat, into shreds.

Since these words accurately and aptly describe an article of food which, according to the testimony, has been produced by Williams and others for more than ten years, it follows that they are descriptive within the meaning of the statute, and that they cannot be appropriated as a trademark by appellant unless it has been the exclusive user of the words during the ten years' period. The evidence above briefly reviewed, we think, clearly establishes the fact that appellant was not the exclusive user of these words during the ten years' period. No claim is made of any attempt on the part of Williams to deceive the public, or that the product of his machines is not in fact as much entitled to be called "shredded whole wheat" as is the product of appellant's machines. That he did not use the words as a trademark, but merely in a descriptive sense, is of no moment. He, in common with all other manufacturers of shredded whole wheat, had the same right to properly designate their product as did the Natural Food Company. The fact that the Patent Office for more than ten years has been granting patents for machines for converting cereals into shreds adds cogency to the contention that the words "Shredded Whole Wheat" properly describe the product of Williams's machines.

It is urged that the Patent Office erred in ruling that Williams used the words "Shredded Whole Wheat" in marking his goods, because his testimony was not corroborated. As above stated, it clearly appears that Williams constructed a machine in 1894 for the manufacture of this product, and that he did in fact produce shredded whole wheat at that time, and that he has continued to do so since that time. It is clearly established by the testimony of several witnesses that he referred to the product of his machines as shredded whole wheat; that he sold it as such, and that it was known as such. It is true that Williams is the only witness who testified that the boxes in which it was packed were marked "Shredded Whole Wheat," but we think the circumstances so strongly corroborate his testimony that further corroboration is unnecessary. It being established that he was the inventor and builder of machines to produce shredded whole wheat, and that he actually produced and sold it, it necessarily follows that he would be likely to designate the product of his machine by its proper name.

The appellant for ten years prior to 1905 had not exclusively used the words which it sought to have registered, and its application, therefore, was properly denied.

Moreover, it is open to question whether appellant in fact used these words as a trademark until after the enactment of the "ten years' clause" in 1905. The carton used by appellant prior to 1905 contains the figure of a woman holding a torch and a sheaf of wheat. The word "trademark" appears immediately under this figure, indicating quite clearly that the Natural Food Company claimed the figure as its trademark, and not the words "Shredded Whole Wheat," which were apparently then used to merely describe the contents of the package.

The decision of the Commissioner of Patents was right, and is therefore affirmed. The clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents in accordance with law.                    *Affirmed.*